UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THETHESIUS HOSEA MOSLEY,<br><br>                    Plaintiff,<br><br>          v.<br><br>ZEPP,<br><br>                    Defendant. | No.  1:23-cv-00421-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 41)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

**I.      INTRODUCTION**

Plaintiff Thethesius Hosea Mosley is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1] This case proceeds on Plaintiff's deliberate indifference claim against Defendant Zepp, stemming from Plaintiff's allegations in his complaint that Defendant failed to treat his knee injury.

On June 20, 2024, Defendant filed a motion for summary judgment, arguing that Plaintiff does not have evidence to support his claim and the undisputed facts showed that Defendant extensively treated Plaintiff's knee injury. (ECF No. 41). As discussed further below, despite multiple extensions that culminated in a December 20, 2024 deadline for Plaintiff to oppose Defendant's motion, Plaintiff has failed to do so.

---

[1] Plaintiff is not proceeding *in forma pauperis*. (April 24, 2023 docket entry noting receipt for filing fee).

1

Upon review, the Court concludes that Defendant has shown that Plaintiff does not have evidence to sustain this case and Plaintiff, who has failed to respond to the motion for summary judgment, has not shown any genuine issues for trial. Accordingly, the Court will recommend that Defendant's motion for summary judgment be granted.

## II.     BACKGROUND

### A. Plaintiff's Complaint

Plaintiff filed his complaint in March 2023. (ECF No. 1). He alleges as follows.

On June 3, 2021, Plaintiff was jumping onto the dayroom table as a form of exercise and felt a pop in his left knee. Afterwards, he could not walk or put pressure on the knee. He requested medical attention and was seen by a nurse and was informed that Defendant Zepp was going to be on vacation for 60 days. Therefore, he was denied any form of medical care for his "swollen left meniscus tear knee."

Thereafter, Plaintiff generally indicates that he requested medical care but was denied any type of basic treatment. Notably, by July 26, 2021, no care, including pain medication, had been provided.

Accordingly, Plaintiff filed a healthcare grievance on August 6, 2021, because the "entire medical staff failed to assist [him] with any type of care as" his condition worsened. The only way to get to his appointments was to limp there or ask a young person to help him. The doctor refused to provide him a cane.

Plaintiff was not getting anywhere with KVSP administration, and "went to the next level," but nothing actually changed as far as him receiving medical help for his knee. Plaintiff is still having trouble with his knee, and his "physical therapy sessions are mostly stop and go sessions whereas the preparation to getting surgery has depended on" completing physical therapy and the problem is that "the correction officer fail[ed] to transport [him] to the session."

Plaintiff states that he received no medications for his knee for eighteen months. "Only after filing with the Government Claims Program, Office of Risk and Insurance Management Department of General Services, did real results for corrective treatment start, which began" with a first pain shot on October 28, 2022.

Plaintiff concludes by listing some specific allegations that appear directed against

Defendant Zepp, stating that Zepp "watched his patient suffer for nearly 6 months and without the least care for a patient who actually pleaded with him for medical treatment from . . . day one." Plaintiff told Zepp that it had to be a meniscus tear, but Zepp just laughed and said he was in more pain than Plaintiff and told him that his knee pain was just osteoarthritis even though his knee had remained swollen for nearly four months. Plaintiff had a purple visible swollen knee, but Zepp refused him basic care and it took him nine months to order a cane even after Plaintiff's condition worsened.

At screening, the Court determined that only Plaintiff's claim that Defendant Zepp was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment should proceed. (ECF No. 9). After Plaintiff filed a notice to proceed on only this claim (ECF No. 11), the Court issued findings and recommendations consistent with the screening order (ECF No. 13), which the District Judge adopted (ECF No. 17).

### B. Defendant's Motion and Plaintiff's Lack of Opposition

On June 20, 2024, Defendant filed a motion for summary judgment arguing that Plaintiff did not have evidence to support his claim and that Defendant provided extensive treatment for Plaintiff's knee. (ECF No. 41). Thereafter, the Court granted Plaintiff three extensions to respond to the motion, mainly based on Plaintiff's professed lack of access to legal materials, which culminated in a final deadline of December 20, 2024, for Plaintiff to file his opposition. (ECF Nos. 44, 48, 63). When added together, the granted extensions equal about five extra months for Plaintiff to respond to the motion for summary judgment.

However, despite warning Plaintiff that, if he failed to timely respond, "Defendant's motion for summary judgment may be granted, and this case may be dismissed, without giving him a further opportunity to respond," Plaintiff has failed to file an opposition, file another extension request, or file anything since the Court's last order on the issue. (ECF No. 66).

### III. DEFENDANT'S MOTION AND UNDISPUTED FACTS

Defendant's motion for summary judgment primarily argues that Plaintiff lacks evidence to support his claim that Defendant was deliberately indifferent to his serious medical needs related to his knee injury.[2] (ECF No. 41). Rather, Defendant contends that Defendant provided

---

[2] Defendant also argues that Defendant is entitled to qualified immunity and that Plaintiff's claim for

3

Plaintiff extensive treatment for his knee. In support of this argument, Defendant attaches evidence to his motion for summary judgment, which mainly consists of Defendant's declaration and Plaintiff's medical records.

As required by Local Rule 260(a), Defendant has provided a statement of undisputed facts, which cite the corresponding evidence used to support them. (ECF No. 41-3). Summarized, the most material facts that Defendant relies on are as follows:

Plaintiff was confined at Kern Valley State Prison at the time of the events alleged and Defendant was a doctor and surgeon who worked at the prison. Plaintiff received a nursing evaluation on June 10, 2021, for complaints of left knee pain after he purportedly injured his knee jumping over a table. The knee was not swollen or deformed; Plaintiff had a normal gait, and he received a bandage. The nurse submitted a refill slip for a gel that Plaintiff could use on his knee.

Defendant ordered an x-ray of the knee that same day, which revealed only minimal osteoarthritis—the knee was not broken or dislocated. Defendant saw Plaintiff on July 2, 2021, for knee pain complaints and a follow up on the x-ray. An examination revealed mostly normal findings and Defendant developed a working diagnosis that Plaintiff had tendinitis given his recent high-impact exercise, osteoarthritis, and obesity. There was no indication that Plaintiff needed emergent medical attention. Defendant prescribed prednisone, maintained another prescription, and ordered a consultation with a dietician to help with Plaintiff's obesity.

After some intervening treatment with other medical providers, Plaintiff saw Defendant again on September 16, 2021, including for complaints of knee pain. Defendant noted that Plaintiff had a short left leg and had custom orthopedic footwear to account for the difference. Defendant updated the custom orthotic footwear accommodation.

Plaintiff saw Defendant again on October 25, 2021, in part for complaints of knee pain. Plaintiff's exam was mostly normal, *e.g.*, his range of motion in his leg left was normal, he could get on and off the exam table without issue, and his knee was not swollen. However, Defendant suspected a medial meniscus tear based on some abnormal findings and ordered physical therapy and an MRI of Plaintiff's left knee. Likewise, Defendant recommended that Plaintiff continue

---

punitive damages fails. The Court need not address these arguments as Defendant's primary argument—that Plaintiff lacks evidence to support his claim—disposes of this case.

using a gel for pain relief, but denied Plaintiff's request for other medications that Defendant determined were not appropriate for a meniscus tear.

Defendant met with Plaintiff on December 17, 2021, to address his request for a cane. Again, Plaintiff had normal findings on examination, *e.g.*, a normal gait. Defendant ordered a cane and re-ordered an MRI, which had been previously denied because Plaintiff had not yet completed physical therapy.

Defendant met with Plaintiff again on December 27, 2021, and by this time, the MRI had been approved despite Plaintiff not yet completing physical therapy. The physical exam of Plaintiff was normal.

Plaintiff had his MRI on January 21, 2022, which revealed no discrete tear of either of Plaintiff's menisci and only a fraying of his lateral meniscus. He met with Defendant for a follow up of the MRI results on February 14, 2022. Plaintiff had some normal findings; however, Defendant noted that Plaintiff had pain in the medial joint space of his left knee, which is the opposite side of where the frayed meniscus was. This, along with a positive McMurray test, and Plaintiff's medial left knee joint being tender, indicated to Defendant that Plaintiff's medial meniscus was damage. Defendant submitted an electronic consultation for an orthopedic opinion for what appeared to be inconsistent findings from the MRI and the physical examinations. Defendant also later ordered a request for orthopedic surgery.

On March 7, 2022, Defendant reviewed Plaintiff's medical file and updated the care plan, noting that the request for orthopedic surgery was denied pending Plaintiff's completion of physical therapy. Defendant submitted another e-consult to orthopedics. On March 8, 2022, the orthopedic e-consult results stated that a frayed meniscus would not result in the knee giving out and recommended PT.

Defendant saw Plaintiff on March 10, 2022, in part to discuss the e-consult and the denial of surgery. However, Defendant did not attempt to physically examine Plaintiff based on his loud and threatening demeanor. Plaintiff started physical therapy and received his first physical therapy evaluation on March 14, 2022.

On May 2, 2022, Defendant met with Plaintiff to address his complaint that someone had bumped into his left knee. The physical exam was normal, but Plaintiff still had knee pain.

Defendant ordered another x-ray and refused Plaintiff's request for medications that Defendant deemed inappropriate. The x-ray revealed no fracture, dislocation, or swelling—only mild osteoarthritis.

On June 13, 2022, Defendant met with Plaintiff and noted that he was ambulatory and that Plaintiff needed to complete physical therapy before he received a face-to-face orthopedic consultation.

As Plaintiff's physical therapy was nearing its end, Defendant submitted a request for orthopedic surgery evaluation on July 22, 2022, and the request was approved on July 25.

On September 20, 2022, Defendant had his final meeting with Plaintiff as his primary care provider. Defendant informed Plaintiff that he was approved for an orthopedic consultation, but they were waiting for it to be scheduled with the outside institution. Plaintiff was ambulatory and his physical exam results were normal.

Plaintiff received additional care after his conclusion of treatment with Defendant.

On October 12, 2022, Plaintiff was discharged from physical therapy—having completed 13 out of 14 sessions with a final session date of October 5, 2022. Additionally, Plaintiff had an x-ray of his knee, a meeting with another provider for his knee pain, an intra-articular injection, and finally an arthroscopic surgery on his left knee on September 1, 2023, which surgery revealed a horizontal tear of the posterior horn of the medial meniscus. Plaintiff had three post-operative visits that noted no complications following the surgery.

## IV.  LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact.
Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

## V. ANALYSIS

In light of the above legal standards and undisputed facts, the Court now considers Defendant's motion for summary judgment, which argues that Plaintiff has no evidence to support his claim and the undisputed facts establish that Defendant provided extensive medical treatment for Plaintiff's knee and thus was not deliberately indifferent to Plaintiff's serious medical needs.[3]

Upon review, the Court concludes that Defendant has met Defendant's initial burden of showing that there is an absence of evidence to support Plaintiff's claims. As Defendant argues, the undisputed evidence shows that Defendant extensively treated Plaintiff's knee injury, contrary to the assertions in the complaint that Plaintiff received essentially no treatment. Among other things, shortly after his knee injury, Plaintiff received treatment, including from Defendant. And throughout Plaintiff's subsequent medical treatment and despite mostly normal examination findings, Defendant took Plaintiff's complaints seriously and consistently saw him multiple times for his knee injury; ordered consultations with other providers; ordered x-rays, an MRI, and physical therapy; and referred him for an evaluation for orthopedic surgery, which surgery was ultimately performed.

In light of the extensive treatment record establishing that Defendant was not deliberately indifferent to Plaintiff's knee injury, the burden shifts to Plaintiff to designate specific evidence demonstrating the existence of genuine issues for trial. However, Plaintiff has offered no evidence in opposition to Defendant's evidence, let alone evidence from which a jury could reasonably render a verdict in his favor.

Accordingly, as the undisputed evidence does not support Plaintiff's claim that Defendant was deliberately indifferent to his serious medical needs, the Court will recommend that Defendant's motion for summary judgment be granted and this case be dismissed.

---

[3] Under Local Rule 230(c), the Court construes Plaintiff's "failure to file a timely opposition . . . as a nonopposition to the motion." However, the Court will not recommend granting Defendant's motion for summary judgment solely because Plaintiff failed to file a response. Rather, consistent with the summary judgment standards discussed below, the Court will consider whether Defendant has sufficiently demonstrated that summary judgment is warranted. *Cf. Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("A local rule that requires the entry of summary judgment simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist, would be inconsistent with Rule 56, hence impermissible under Rule 83.").

## VI. CONCLUSION AND RECOMMENDATIONS

For the above reasons, there is not a genuine dispute of material fact and Defendant is entitled to judgment as a matter of law.

Accordingly, IT IS RECOMMENDED that Defendant's motion for summary judgment (ECF No. 41) be granted, that judgment be entered in Defendant's favor, and that the Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 16, 2025**          /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE